FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

DEC 21 2021

TAMMY H. DOWNS, CLERK
By:_____ DEP CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

| | |
|---|---|
| STAN HASTINGS, individually and on behalf of other similarly situated.<br><br>Plaintiff,<br>v.<br><br>NEXLEVEL DIRECT LLC, AIFY LLC and GARET BREITFUSS<br><br>Defendants. | Case No.: 4:21-cv-1228-JM<br><br>**CLASS ACTION COMPLAINT FOR DAMAGES, STATUTORY DAMAGES, AND REQUEST FOR INJUNCTIVE RELIEF**<br><br>**JURY TRIAL DEMANDED**<br>This case assigned to District Judge Moody<br>and to Magistrate Judge Ray |

**Preliminary Statement**

1. As the Supreme Court has explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back. As relevant here, the Telephone Consumer Protection Act of 1991, known as the TCPA, generally prohibits robocalls to cell phones and home phones." *Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 2335, 2343 (2020).

2. Plaintiff Stan Hastings brings this action under the TCPA alleging that Defendant NexLevel Direct LLC ("NexLevel") hired AIFY LLC knowing that they would make pre-recorded telemarketing calls for purposes of promoting the goods and services of their clients.

3. Because these calls were transmitted using technology capable of generating thousands of similar calls per day, he sues on behalf of a proposed nationwide class of other persons who received similar calls.

4. A class action is the best means of obtaining redress for the Defendant's illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

## Parties

5. Plaintiff, Stan Hastings, resides in this District.

6. Defendant NexLevel Direct LLC is an Illinois limited liability company. It has its principal place of business in Bainbridge Island, WA.

7. Defendant AIFY, LLC is a Nevada limited liability company.

8. Defendant Garet Breitfuss is an individual residing in Nevada.

## Jurisdiction & Venue

9. The Court has federal question subject matter jurisdiction over these TCPA claims. *Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740 (2012).

10. The Court has personal jurisdiction over the Defendant because they engaged in telemarketing conduct into this District.

11. Venue is proper under 28 U.S.C. § 1391(b)(1) because a substantial part of the events or omissions giving rise to the claim occurred in this District, as the automated calls were made into this District.

## TCPA Background

12. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." *See* 47 U.S.C. § 227(b)(1)(A)(iii). The

TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A). *See* 47 U.S.C. § 227(b)(3).

13. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

14. The FCC also recognized that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02-278, Report and Order, 18 F.C.C. Rcd. 14014, 14115 ¶ 165 (2003).

15. While "prior express consent" is required for all automated and prerecorded calls, in 2013, the FCC required "prior express written consent" for all such telemarketing calls to wireless numbers and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

16. "Telemarketing" is defined as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 C.F.R. § 64.1200(f)(12).

17. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

18. A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

19. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry and provides a private right of action against any entity that makes those calls, or "on whose behalf" such calls are made. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

Individual Officer Liability under the TCPA

20. Mr. Breitfuss is the managing member of AIFY, LLC and is liable for its conduct.

21. Under the TCPA, an individual such as Mr. Breitfuss may be personally liable for the acts alleged in this Complaint pursuant to 47 U.S.C. § 217 of the TCPA, which reads, *inter alia*:

> [T]he act, omission, or failure of any officer, agent, or other person acting for or employed by any common carrier or user, acting within the scope of his employment, shall in every case be also deemed to be the act, omission, or failure of such carrier or user *as well as of that person.*

*See* 47 U.S.C. § 217 (emphasis added).

22.     When considering individual officer liability under the TCPA, other courts have agreed that a corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *See Jackson Five Star Catering, Inc. v. Beason*, 2013 U.S. Dist. LEXIS 159985, *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA 'where they had direct, personal participation in or personally authorized the conduct found to have violated the statute.'"); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415-16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

23.     Mr. Breitfuss personally participated in the actions complained of by: (a) selecting the recorded message that was going to be used on the calling; (b) regularly communicating with and implementing instructions from NexLevel; (c) engaging in the hiring, training and overseeing of AIFY's call center operations and (d) personally authorizing any other conduct of NexLevel.

**Factual Allegations**

24. NexLevel offers lead generation services.

25. To execute these services, NexLevel relies on telemarketing, including robocalls, done by third parties.

<u>Call to The Plaintiff Hastings</u>

26.     Plaintiff Hastings is a "person" as defined by 47 U.S.C. § 153(39).

27.     Mr. Hastings' telephone number, (501) 680-XXXX, is registered to a cellular telephone service.

28.     Mr. Hastings' telephone number has been on the National Do Not Call Registry since 2005.d

29. Mr. Hastings received a pre-recorded call from AFIY as part of its relationship with NexLevel to generate new business for its debt consolidation customers:

30. The pre-recorded message said:

> "Please listen carefully. The new law, CV19, now makes current credit card balances and certain types of loans and lines of credit non-collectible and non-enforceable. Due to the current situation we all face this new law is helping stop predatory banks and lenders while we all get back on track. To find out how much of your debts will be erased, press five on your phone now. Thank you."

31. The company was not identified on the call.

32. Finally, to identify the calling party, Mr. Hastings engaged the telemarketer.

33. The first company identified was Rescue 1 Financial by a "Cindy".

34. Rescue 1 Financial has identified that it received the Plaintiff's lead from NexLevel.

35. NexLevel then informed the Plaintiff that the call was made as part of its relationship with AIFY.

36. The call invaded Plaintiff's privacy and intruded upon his right to seclusion.

37. Plaintiff did not consent to receive Defendant's calls prior to the receipt of the unsolicited conduct.

**NexLevel's Liability for the Telemarketing Conduct of AIFY**

38. The Federal Communication Commission ("FCC") is tasked with promulgating rules and orders related to enforcement of the TCPA. *See* 47 U.S.C. 227(b)(2).

39. The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *See In re Rules & Regulations Implementing the TCPA*, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995).

40. In their January 4, 2008 ruling, the FCC reiterated that a company on whose behalf a telephone call is made bears the responsibility for any violations. *Id.* (specifically recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

41. On May 9, 2013, the FCC confirmed this principle in a Declaratory Ruling holding that companies such as NexLevel may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

*May 2013 FCC Ruling*, 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted).

42. NexLevel knowingly and actively accepted business that originated through the telemarketing calls from AIFY.

43. Indeed, despite the receipt of multiple prior TCPA lawsuits relating to the telemarketing of third parties, NexLevel continued to do business with AIFY and contact the Plaintiff.

44. Moreover, NexLevel maintained interim control over the actions of AIFY.

45. For example, NexLevel gave interim instructions to AIFY by providing (a) the states that they were permitted to call, (b) tell them the hours they were permitted to call and (c) giving them a specific telephone number they had to transfer the calls to.

46. This include a specific instruction that AIFY was to call Arkansas, the state where Mr. Hastings is located.

47. NexLevel also provided instructions on the content of the call, including ensuring that the specific amount of debt a call recipient had was secured during the call.

48. Indeed, with this information transferred to NexLevel's client along with their phone number, it had the ability to determine if AIFY was sending it leads whose information was on the National Do Not Call Registry.

49. AIFY informed NexLevel that the calls came from their own call center, which they run outside of the United States.

50. NexLevel was aware that AIFY was playing a recording for the leads.

51. Finally, the May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id.* at 6592-593 (¶ 46). Moreover, evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 (¶ 46).

**Class Action Allegations**

52. As authorized by Rule 23(b)(2) and/or (b)(3) of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of class of all other persons or entities similarly situated throughout the United States.

53. The Class of persons Plaintiff proposes to represent is tentatively defined as:

> Robocall Class:   All persons within the United States to whom: (a) AIFY and/or a third party acting on their behalf, made one or more non-emergency telephone calls as part of their relationship with NexLevel; (b)

to their cellular telephone number; (c) using an artificial or prerecorded voice; and (d) at any time in the period that begins four years before the date of the filing of this Complaint to trial.

54. The Class as defined above is identifiable through phone records and phone number databases.

55. The potential members of the Class number at least in the hundreds. Individual joinder of these persons is impracticable.

56. The Plaintiff Hastings is a member of the Class.

57. There are questions of law and fact common to Plaintiff and to the proposed Class, including but not limited to the following:

   a. Whether NexLevel is vicariously liable for the calling conduct of AIFY;

   b. Whether Defendants violated the TCPA by using automated calls to contact putative class members cellular telephones;

   c. Whether Defendants placed calls without obtaining the recipients' prior express consent for the call; and

   d. Whether the Plaintiff and the class members are entitled to statutory damages because of Defendants' actions.

58. The Plaintiff's claims are typical of the claims of class members.

59. The Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the Class, he will fairly and adequately protect the interests of the Class, and counsel skilled and experienced in class actions, including TCPA class actions, represents them.

60. Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient

adjudication of the controversy. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendant and/or their agents.

61. The likelihood that individual members of the class will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

62. The Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for the entire Class' membership described above.

## LEGAL CLAIMS

### First Claim for Relief
### Violation of the TCPA's Automated Call provisions

63. The Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

64. Defendants' calls were made without the prior express consent, or the prior express written consent, of the called parties.

65. The Defendants violated the TCPA by (a) using a pre-recorded message to make calls to cellular telephone numbers without the required consent, or (b) by the fact that others made those calls on its behalf. *See* 47 U.S.C. § 227(b).

66. The Defendants' violations were willful and/or knowing.

67. The TCPA also authorizes injunctive relief, and the Plaintiff seeks injunctive relief prohibiting Defendants from calling telephone numbers using a pre-recorded voice, absent an emergency circumstance.

### Relief Sought

WHEREFORE, for themselves and all class members, Plaintiff requests the following relief:

A. Injunctive relief prohibiting Defendants from calling telephone numbers using a pre-recorded voice, absent an emergency circumstance;

B. Because of Defendants' violations of the TCPA, Plaintiff seek for himself and the other putative Class members $500 in statutory damages per violation or—where such regulations were willfully or knowingly violated—up to $1,500 per violation, pursuant to 47 U.S.C. § 227(b)(3);

C. An order certifying this action to be a proper class action under Federal Rule of Civil Procedure 23, establishing any appropriate class the Court deems appropriate, finding that Plaintiff are proper representative of the Class, and appointing the lawyers and law firms representing Plaintiff as counsel for the Class; and

D. Such other relief as the Court deems just and proper.

**Plaintiff requests a jury trial as to all claims of the complaint so triable.**

Dated: December 21, 2021

_____,
Jason M. Ryburn
Ryburn Law Firm
650 S. Shackleford Rd., Ste. 231
Little Rock, AR 72211
[o] (501) 228-8100
[f] (501) 228-7300
jason@ryburnlawfirm.com

Anthony I. Paronich (subject to *pro hac vice*)
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
[o] (617) 485-0018
[f] (508) 318-8100
anthony@paronichlaw.com